FILED
CLERK, U.S DISTRICT COURT

JUL 21 2008

CENTRAL DISTRICT
BY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

ADRIAN AYALA,

        Petitioner,

        v.

L.E. SCRIBNER, Warden,

        Respondent.

Case No. CV 07-8377-GPS (JTL)

ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

    Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition for Writ of Habeas Corpus, all the records and files herein, and the Final Report and Recommendation of the United States Magistrate Judge. Objections to the Report and Recommendation have been filed herein. Having made a de novo determination of those portions of the Report and Recommendation to which objection has been made, the Court concurs with and adopts the findings, conclusions and recommendations set forth in the Final Report and Recommendation of the Magistrate Judge.

    IT IS ORDERED that judgment be entered dismissing the Petition for Writ of Habeas Corpus with prejudice.

DATED: 7/20/08

GEORGE P. SCHIAVELLI
UNITED STATES DISTRICT JUDGE

FILED
CLERK, U.S. DISTRICT COURT
MAY -8 2008
CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN AYALA,<br><br>    Petitioner,<br><br>v.<br><br>L.E. SCRIBNER, Warden,<br><br>    Respondent. | Case No. CV 07-8377-GPS (JTL)<br><br>FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

The Court submits this Final Report and Recommendation to the Honorable George P. Schiavelli, United States District Judge, pursuant to 28 U.S.C. Section 636 and General Order 05-07 of the United States District Court for the Central District of California.

**PROCEEDINGS**

On December 19, 2007, Adrian Ayala ("Petitioner"), a prisoner in state custody, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254.[1] On March 7, 2008,

---

[1] The Petition was actually filed on December 28, 2007. The Ninth Circuit, however, applies the mailbox rule to filings by state prisoners. Under that rule, courts deem a state prisoner's pleading filed when a prisoner hands the petition over to prison authorities for mailing to the court. See Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) ("A prisoner who delivers a document to prison authorities gets the benefit of the prison mailbox rule, so long as he diligently follows up once he has failed to receive a disposition from the court after a reasonable period of time."). Accordingly, the Court deems (continued...)

L.E. Scribner ("Respondent") filed a Motion to Dismiss the Petition for Writ of Habeas Corpus ("Motion to Dismiss"), alleging that the Petition is barred by the applicable statute of limitations. Petitioner filed an Opposition to the Motion to Dismiss ("Opposition") on March 26, 2008. Respondent filed a Reply to the Opposition ("Reply") on April 4, 2008. On April 9, 2008, the Court issued a Report and Recommendation, recommending that the district court dismiss the Petition with prejudice. Thereafter, on April 29, 2008, Petitioner filed his "Objections to Magistrate's Report and Recommendations" ("Objections").

## BACKGROUND

A Los Angeles County jury found Petitioner guilty of four counts of robbery (counts 1-4), four counts of assault with a firearm (counts 5-8), one count of making criminal threats (count 10), four counts of false imprisonment by violence (counts 11-14), one count of unlawful driving or taking of a vehicle (count 15), one count of conspiracy to commit robbery (count 16), and kidnapping (count 18). Petitioner was also found guilty of various armed principal and personal use weapons allegations on all counts other than counts 15 and 18. The trial court sentenced Petitioner to twenty-eight (28) years in state prison. (See Petition at 2; Respondent's Lodgment No. 1, Court of Appeal Opinion at 2).

Petitioner appealed his conviction to the California Court of Appeal. On April 21, 2005, the court of appeal affirmed Petitioner's conviction in an unpublished opinion. (Respondent's Lodgment No. 1, Court of Appeal Opinion at 2, 45; see Petition at 2-3). Petitioner then filed a petition for review in the California Supreme Court. (Respondent's Lodgment No. 2; see Petition at 3). The California Supreme Court denied the petition for review on August 10, 2005. (Respondent's Lodgment No. 4).

On September 15, 2006, Petitioner filed a petition for writ of habeas corpus in the Los

---

[1](...continued)
the Petition filed as of December 19, 2007, the date on which Petitioner signed the Petition and the proof of service.

Angeles County Superior Court.[2] (Respondent's Lodgment No. 5; see Petition at 4). The Los Angeles County Superior Court denied the habeas petition on September 27, 2006. (See Respondent's Lodgment No. 6).

On October 11, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal.[3] (See Respondent's Lodgment No. 7; see Petition at 4). The court of appeal denied the habeas petition on November 13, 2006. (See Respondent's Lodgment No. 8).

On December 10, 2006, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court.[4] (Respondent's Lodgment No. 9; see Petition at 4-5). The California Supreme Court summarily denied the habeas petition on September 25, 2007. (Respondent's Lodgment No. 10).

Petitioner filed his original federal Petition on December 19, 2007.[5]

### PETITIONER'S CLAIMS

1. The prosecution and the trial court violated Petitioner's rights to due process and Equal Protection in that (a) the prosecution systematically excluded women from the prospective jury panel and committed Batson[6] error in excluding a Filipino prospective juror and (b) the trial court denied Petitioner's motions under People v. Wheeler, 22 Cal. 3d 258 (1978) and curtailed Petitioner's efforts during voir dire.

2. The prosecution violated Petitioner's Sixth and Fourteenth Amendment rights by

---

[2] Petitioner signed the superior court habeas petition and proof of service on September 15, 2006. (See Respondent's Lodgment No. 5). See supra n.1. Thus, the Court deems that petition filed as of September 15, 2006.

[3] Petitioner signed the court of appeal habeas petition and proof of service on October 11, 2006, and it was subsequently filed on October 16, 2006. (See Respondent's Lodgment No. 7). See supra n.1. Thus, the Court deems that petition filed as of October 11, 2006.

[4] Petitioner signed the habeas petition and proof of service on December 10, 2006, and it was subsequently filed on December 18, 2006. (See Respondent's Lodgment No. 9). See supra n.1. Thus, the Court deems that petition filed as of December 10, 2006.

[5] See supra n.1.

[6] Batson v. Kentucky, 476 U.S. 79 (1986).

3

refusing to comply with discovery obligations.

    3. The prosecution prejudiced Petitioner's rights to due process and a fair trial by introducing inadmissible evidence throughout the trial.

    4. The trial court erred by failing to discharge two jurors pursuant to allegations of juror misconduct, refusing to give a third party culpability jury instruction, and allowing the prosecution to commit Griffin[7] error during closing arguments.

    5. The evidence was insufficient to support the charges against Peittioner.

## DISCUSSION

The instant Petition was filed after April 24, 1996, the date of the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and is reviewed under the provisions of that Act. See Lindh v. Murphy, 521 U.S. 320, 326-27 (1997); Patterson v. Stewart, 251 F.3d 1243, 1245 (9th Cir. 2001). The AEDPA amended 28 U.S.C. Section 2244 to impose a one-year statute of limitations on federal habeas petitions by persons in custody pursuant to state court judgments. See Patterson, 251 F.3d at 1245; see also Tillema v. Long, 253 F.3d 494, 498 (9th Cir. 2001).

The one-year limitation period does not begin to run before April 24, 1996, and a petitioner for whom the period would have begun to run before that date would have until at least April 24, 1997 in which to file a petition for writ of habeas corpus. See Duncan v. Walker, 533 U.S. 167, 170-71 (2001); Patterson, 251 F.3d at 1245-46. Otherwise, the one-year limitation period embodied in 28 U.S.C. Section 2244(d) controls. It states:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

---

[7] Griffin v. California, 380 U.S. 609 (1965).

>(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Under Section 2244(d)(1)(A), the process of direct review does not conclude until either the United States Supreme Court has denied review, or, if no petition for certiorari has been filed, the 90-day period for filing has expired. See Tillema, 253 F.3d at 498; Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999); Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002).

Here, Petitioner's conviction became final on November 8, 2005, the last day of the 90-day period after the California Supreme Court denied his petition for review on August 10, 2005. See Bowen, 188 F.3d at 1159 (where petitioner does not file a petition for certiorari, his conviction becomes final 90 days after the California Supreme Court denies review); Miranda, 292 F.3d at 1065 (same). Petitioner, therefore, had one year from November 8, 2005, or until November 8, 2006, absent any statutory or equitable tolling, within which to file his federal habeas petition. See 28 U.S.C. § 2244(d).

To the extent Petitioner is arguing that he is entitled to a later starting date of the limitations period because the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), announced a new rule retroactive on collateral review pursuant to 28 U.S.C. Section 2244(d)(1)(C), the Court rejects the argument. (See Opposition at 7). First, as Respondent notes, Petitioner does not raise a Blakely claim in the instant federal Petition.[8]

---

[8] It appears, however, that Petitioner did raise a claim under Blakely during his state court proceedings on direct appeal in the California Court of Appeal (see Petition at 2; Respondent's Lodgment No. 1, Court of Appeal Opinion at 44) and in his state habeas petitions in the Los Angeles County Superior Court, the California Court of Appeal, and the California Supreme Court. (See Petition (continued...)

(See Petition at 5-6). Second, even if Petitioner had raised such a claim in the instant Petition, Petitioner is still not entitled to statutory tolling. Section 2244(d)(1) provides that the limitations period begins to run "from the latest of – (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . [or] (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2244(d)(1)(A), (C) (emphasis added). In this case, Petitioner's conviction became final on November 8, 2005, after the United States Supreme Court issued its decision in Blakely, which was on June 24, 2004. Thus, as Respondent argues, Petitioner is already receiving the benefit of a later starting date of the limitations period based on the finality of his conviction.[9]

---

[8](...continued)
at 4-5; Respondent's Lodgment Nos. 5, 7, 9). In his Objections, Petitioner states that he "should be given the right to present all his claims on the merits including his #6 Blakely claim." (See Objections at 5). Petitioner suggests that he failed to include the Blakely claim in the Petition due to circumstances beyond his control, and appears to be requesting that the Court allow him to amend the instant Petition to include the Blakely claim. (See Objections at 2-3, 5). Because the Court finds that the instant Petition is untimely and, therefore, must be dismissed, the Court denies Petitioner's request to amend the Petition to include the Blakely claim.

[9] The Court also notes that, even if Petitioner's conviction had become final before the Supreme Court decided Blakely, Petitioner's limitations period would not commence on the date the Supreme Court issued the Blakely decision. The Ninth Circuit has held that Blakely does not apply retroactively to cases on collateral review. See United States v. Cruz, 423 F.3d 1119, 1120 (9th Cir. 2005); Schardt v. Payne, 414 F.3d 1025, 1038 (9th Cir. 2005) (holding that Blakely does not apply retroactively to a conviction that was final before the decision was announced); Cook v. United States, 386 F.3d 949, 950 (9th Cir. 2004) (stating that Supreme Court has not made Blakely retroactive to cases on collateral review); Witt v. Sullivan, 2007 U.S. Dist. LEXIS, at *9-10 (S.D. Cal. 2007) (holding that petitioner could not invoke an exception under Section 2244(d)(1)(C) because Blakely does not apply retroactively to convictions that became final before the case was announced and Petitioner's conviction became final two years before Blakely was decided); see also Jordan v. Evans, 2007 U.S. Dist. LEXIS 68222, at *27-29 (S.D. Cal. 2007) ("Although the Ninth Circuit has not yet ruled on the retroactivity of Cunningham[v. California, 127 S. Ct. 856 (2007)], Ninth Circuit precedent indicates that the case should not apply retroactively on federal collateral review . . . . Cunningham applied the new procedural rule announced in [Blakely v. Washington, 542 U.S. 296 (2004)] to California's determinate sentencing law. Given Cunningham's reliance on Blakely, and given the fact that Blakely does not apply retroactively . . . Cunningham also does not apply retroactively." (internal citation omitted)). As such, Section 2244(d)(1)(C), under which the one-year clock begins to run on the date a new constitutional right retroactive on collateral review has been recognized by the Supreme Court, would not apply to Petitioner's case.

The Court also rejects Petitioner's argument that he is entitled to delayed commencement of the limitation period under 28 U.S.C. Section 2244(d)(1)(D). Under Section 2244(d)(1)(D), the one-year statute of limitations begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner appears to argue that he discovered the factual predicate for his Batson claim on the date the California Court of Appeal affirmed his conviction, relying in part on a "strong likelihood standard" instead of the "reasonable inference standard" that the California courts should have adopted. Thus, according to Petitioner, his limitations period commenced on April 21, 2005, the date on which the California Court of Appeal affirmed Petitioner's conviction on direct appeal.[10] (See Opposition at 7). However, even assuming that Petitioner did not discover the factual predicate of his Batson claim until the California Court of Appeal affirmed Petitioner's conviction on April 21, 2005, Petitioner is already receiving the benefit of a later starting date of the limitations period based on the finality of his conviction, on November 8, 2005.[11] See 28 U.S.C. § 2244(d)(1)(A).

In sum, commencement of Petitioner's limitations period is governed by 28 U.S.C. § 2244(d)(1)(A). As previously stated, Petitioner's conviction became final on November 8, 2005. Accordingly, Petitioner had until November 8, 2006, absent any statutory or equitable tolling, within which to file his federal habeas petition. See 28 U.S.C. § 2244(d).

---

[10] In Johnson v. California, 545 U.S. 162, 168, 173 (2005), the United States Supreme Court agreed with the Ninth Circuit that the "more likely than not" standard, announced in People v. Wheeler, 22 Cal. 3d 258 (1978), for proving that a peremptory challenge was based on impermissible group bias, unconstitutionally conflicted with the standard enunciated in Batson. See also Boyd v. Newland, 467 F.3d 1139, 1144 (9th Cir. 2006) ("The 'strong likelihood' wording originates from Wheeler, the California equivalent of Batson, and the Wheeler standard impermissibly places on the defendant a more onerous burden of proof than that required by the 'raise an inference' standard of Batson."). The Court notes that Johnson did not recognize a new constitutional right, but was an explanation of the right recognized in Batson. See Boyd, 467 F.3d at 1146 ("Johnson discusses the standard that Batson first established. The Johnson opinion relies almost exclusively on the wording used in the Batson opinion; we have concluded that Johnson explains Batson[.]"); see also Jones v. Horel, 2007 U.S. Dist. LEXIS 55501, at *7 (N.D. Cal. 2007). Thus, to the extent Petitioner argues that he is entitled to a delayed start of the limitations period because he raises a claim based on the Supreme Court's decision in Johnson, Petitioner's argument fails. See 28 U.S.C. § 2244(d)(1)(C).

[11] The Court also notes that Petitioner's conviction became final after the Supreme Court issued its decision in Johnson, which was on June 13, 2005.

A.  **Statutory Tolling**

The one-year statute of limitations is "statutorily tolled" under Section 2244(d)(2) for the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Here, "properly filed" refers to the requirements for filing, not the requirements for obtaining relief. See Tillema, 253 F.3d at 499 (applying Artuz v. Bennett, 531 U.S. 4 (2000)). The limitation period "is tolled during the pendency of a state application challenging the pertinent judgment, even if the particular application does not include a claim later asserted in the federal habeas petition." Tillema, 253 F.3d at 502. An application for collateral review is "pending" in state court "as long as the ordinary state collateral review process is in continuance – i.e., until the completion of that process." Carey v. Saffold, 536 U.S. 214, 219-20 (2002). The statute of limitations is not tolled between the time a final decision is issued on direct review and the time the first state collateral challenge is filed, because there is no case "pending" during that time. See Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104 (2000). Statutory tolling also does not apply during the pendency of a prior federal habeas petition. See Duncan, 533 U.S. at 181.

In this case, Petitioner filed his first state petition for writ of habeas corpus in the Los Angeles County Superior Court on September 15, 2006.[12] (Respondent's Lodgment No. 5). At that point, he had allowed 311 days to elapse from November 8, 2005, the date on which the one-year statute of limitations began to run. Thereafter, the statute of limitations was tolled from September 15, 2006 (the date that Petitioner filed his first post-conviction state habeas petition in the Los Angeles County Superior Court) until September 25, 2007 (the date on which the California Supreme Court denied Petitioner's final state habeas petition). See Cal. R. Ct.

---

[12] In his Opposition, Petitioner asserts that he filed a state habeas petition on April 21, 2005 in the California Court of Appeal, in case number B171955, and the court of appeal "affirmed the judgment." (See Opposition at 5). Petitioner appears to confuse directly appealing his conviction in the court of appeal with petitioning the court of appeal for a writ of habeas corpus. On April 21, 2005, on direct appeal in case number B171955, the California Court of Appeal issued its decision affirming Petitioner's conviction. (Respondent's Lodgment No. 1, Court of Appeal Opinion at 1-2, 45).

8.532(b)(2)(C) (former rule 29.4(b)(2)(C)) ("The denial of a petition for a writ within the court's original jurisdiction without issuance of an alternative writ or order to show cause" is "final on filing.").[13] Therefore, Petitioner had 54 days from September 25, 2007, or until November 19, 2007,[14] in which to file his federal habeas petition. Petitioner, however, did not file the instant Petition until December 19, 2007, one month after the limitations period had expired. There is no statutory tolling for the period between the California Supreme Court's denial of Petitioner's final state habeas petition and Petitioner's filing of the instant Petition. Because Petitioner filed his Petition after the applicable statute of limitations had run, the instant Petition is untimely.

B. **Equitable Tolling**

The limitations period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir.), cert. denied, 526 U.S. 1060 (1999). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling [of the statute of limitations] may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)).

A petitioner seeking equitable tolling of the statute of limitations bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way. Mendoza v. Carey, 449 F.3d 1065, 1068 (9th Cir. 2006) (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). The determination of whether

---

[13] The thirty day period under Bunney v. Mitchell, 262 F.3d 973 (9th Cir. 2001) is not applicable to decisions of the California Supreme Court issued after December 31, 2002. See, e.g., Wells v. Mendoza-Powers, 2006 U.S. Dist. LEXIS 40969, at *9 (E.D. Cal. 2006) (citing Phelps v. Alameda, 366 F.3d 722, 724 n.1 (9th Cir. 2004)).

[14] Adding 54 days to September 25, 2007 produces a new deadline of November 18, 2007. However, because November 18, 2007 was a Sunday, Petitioner's federal petition would have been timely if filed on November 19, 2007. See Fed. R. Civ. P. 6(a) ("In computing any period of time prescribed or allowed by these rules . . . [t]he last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday . . . in which event the period runs until the end of the next day which is not one of the aforementioned days.").

equitable tolling is warranted is "highly fact-dependent," and the petitioner "bears the burden of showing that equitable tolling is appropriate." Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005); see also Miranda, 292 F.3d at 1065.

Here, Petitioner appears to argue that he is entitled to equitable tolling of the limitations period because "'no words can explain the stress and fear' Petitioner experienced during the entire year of 2006, as he was torn between meeting the standards of the courts, the California Innocence Project and the state prison where he is serving his sentence. (See Opposition at 8). For the reasons set forth below, Petitioner's equitable tolling argument fails.

First, the Court notes that beyond Petitioner's conclusory assertions that he experienced "stress and fear" from attempting to meet various "standards," Petitioner does not provide any explanation of the "standards" to which he is referring. Nor does Petitioner provide specific details of how these standards, or his alleged stress and fear, affected his ability to file a timely federal habeas petition. As such, Petitioner has not met his burden. See Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (petitioner "bears the burden of showing that equitable tolling is appropriate.").

Second, the documents Petitioner has submitted in support of his equitable tolling argument do not establish that extraordinary circumstances beyond Petitioner's control prevented him from timely filing a federal habeas petition. Petitioner has submitted a series of letters from the California Innocence Project at California Western School of Law.[15] The correspondence indicates that, in 2006, Petitioner consulted with and received assistance from the California Innocence Project with respect to his state habeas petitions. (Opposition, Exh. A). To the extent Petitioner is arguing that equitable tolling applies because the California Innocence Project discouraged Petitioner from filing pro per state habeas petitions, or from filing them earlier, Petitioner's argument fails. The letter dated January 20, 2006 states:

///

---

[15] Specifically, Petitioner has submitted letters from the California Innocence Projected dated January 20, 2006, September 22, 2006, October 2, 2006, and October 19, 2006. (Opposition, Exh. A).

> *While we don't discourage you from seeking help elsewhere and do not want you to miss any legal filing deadlines*, we need to caution you about filing any pro per writ petitions in state court. If you file such a petition and lose, it may prevent us from later raising a claim on your behalf. *As a result we ask that you please not file any petitions in state court without consulting us first*.

(Opposition, Exh. A, Letter from California Innocence Project dated January 20, 2006) (emphasis added). According to the letter, the California Innocence Project did not prevent petitioner from seeking assistance from other sources, or from filing state habeas petitions on his own behalf. Rather, the letter indicates that the California Innocence Project merely requested that Petitioner consult with them before filing any pro per habeas petitions in state court. Indeed, it appears that Petitioner filed his second state habeas petition, in pro per, in the California Court of Appeal, despite the California Innocence Project's request. As previously discussed, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal on October 11, 2006.[16] (See Respondent's Lodgment No. 7). In a letter to Petitioner, dated October 19, 2006, the California Innocence Project wrote:

> I received your letter dated October 12, 2006 today. . . . I need to discuss a few things with you about the writ you just filed. Specifically, there are several concerns that I need to bring to your attention.
>
> Generally, a petitioner gets one chance to file a writ and the petitioner must bring up all of their valid issues including any new evidence. . . .
>
> We believe it is in your best interests to let us conduct our

---

[16] See supra n.3.

> investigation and try to locate as much evidence as possible to include in a writ. We want to make sure that, if at the conclusion of the investigation we have enough information to file a writ, the petition submitted on your behalf is as thorough and convincing as possible.
>
> For these reasons, we believe it is best if you withdraw your <u>pro per</u> writ. Because we cannot promise you that we will have enough information to file a writ at the close of the investigation, <u>this decision is completely up to you</u>.

(Opposition, Exh. A, Letter from California Innocence Project dated October 19, 2006) (emphasis added). The letters submitted by Petitioner indicate that, although the California Innocence Project requested that Petitioner refrain from filing <u>pro per</u> state habeas petitions, the ultimate decision of whether and when to do so rested with Petitioner. Indeed, Petitioner chose to file his state habeas petitions on his own behalf in the Los Angeles County Superior Court, the California Court of Appeal and the California Supreme Court, regardless of the California Innocence Project's requests. (Respondent's Lodgment Nos. 5, 7, 9). As such, Petitioner fails to demonstrate that the California Innocence Project, or the letters therefrom, made it impossible for Petitioner to timely file a federal habeas petition.

Petitioner has also submitted a document entitled "Program Status Report, Part B – Plan of Operation/Staff & Inmate Notification."[17] (Opposition, Exh. B). Again, Petitioner fails to provide any explanation of how this internal prison operating plan affected his ability to file a timely federal habeas petition. <u>See</u> <u>Raspberry</u>, 448 F.3d at 1153. Moreover, the effective date

---

[17] It appears that the prison operating plan was instituted in response to a prison riot which occurred on November 29, 2007, involving five Hispanic inmates during the evening meal release. During the riot, one inmate suffered serious injuries and three inmate-manufactured weapons were discovered in the immediate area of the incident. The prison operating plan states that, "Program will remain normal for the Black, White & Other inmate population. All movement for Hispanic inmates within the housing units will be controlled and all Hispanic movement outside of the housing units (no more than 5 at a time) will be under escort. . . . Legal Library access for Hispanic inmates will be approved court deadlines only." (<u>See</u> Opposition, Exh. B ("Remarks")).

of the prison operating plan was November 30, 2007. (See Opposition, Exh. B). Because the prison operating plan took effect after the limitations period had expired on November 19, 2007,[18] the prison operating plan does not constitute an extraordinary circumstances beyond Petitioner's control which prevented him from filing a timely federal habeas petition within the limitations period.

In his Objections, Petitioner further contends that he is entitled to equitable tolling due to a prison lockdown that occurred on August 18, 2005. (See Objections at 2). In support of his contention, Petitioner has submitted a copy of a Memorandum, dated November 3, 2006, providing an update of the prison lockdown ("Memorandum"). (See Objections, Document #1). The Memorandum states, in relevant part:

> The Institution continues to remain on a modified program for Facilities A, B and C based upon the August 18, 2005, Facility C incident. Facility D returned to normal program on Wednesday, November 1, 2006.
>
> On Monday, October 30, 2006, Facilities A, B and C returned the blacks, whites and others to the level of program that they had prior to the recent facility searches, however the Hispanic unlock list has been reduced on all three facilities. It is our goal to again continue to add to the Hispanic unlock list each week in an effort to bring the entire institution back to normal program.

(Objections, Document #1). Petitioner argues that he has been receiving legal assistance and advice from a black inmate who resides in another building. According to Petitioner, "Hispanic inmates were <u>hard down</u>" during the prison lockdown, "which made it impossible to get my legal work and advice (in writting [sic]) to/from Regal Robinson, C-52405 located in A-3-107u." (See Objections at 2). Petitioner also suggests that equitable tolling is warranted because prison

---

[18] See supra Part A.

inmates must request access to the prison law library, inmates with verified court deadlines have access to the law library only 30 days prior to the expiration of the court deadline, inmates do not have daily access to the law library and, because Facilities A and B share one law library, access to the law library is even more limited. (See Objections at 2, Document #2).

The circumstances described by Petitioner in his Objections are insufficient to establish that he is entitled to equitable tolling. Prison lockdowns or limited or inadequate access to the prison law library generally do not constitute an extraordinary circumstance warranting equitable tolling. See, e.g., Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) (limited library access insufficient to establish extraordinary circumstances); Lindo v. LeFever, 193 F. Supp. 2d 659, 663 (E.D.N.Y. 2002) (transfers between prison facilities, solitary confinement, lockdowns, and restricted access to the law library do not qualify as extraordinary circumstances); Atkins v. Harris, 1999 U.S. Dist. LEXIS 164, at *5 (N.D. Cal. 1999) ("[L]ockdowns, restricted library access and transfers do not constitute extraordinary circumstances sufficient to equitably toll the statute of limitations. Prisoners familiar with the routine restrictions of prison life must take such matters into account when calculating when to file a federal [habeas] petition."); Ciria v. Cambra, 1998 U.S. Dist. LEXIS 18049, at *5-6 (N.D. Cal. 1998) (library closures and restricted law library access did not constitute extraordinary circumstances warranting equitable tolling and one-year limitations period "gives the prisoner plenty of time to get to federal court and leaves room for the inevitable delays in unpredictable lockdowns and other interruptions in research and writing time common in prison."); United States v. Van Poyck, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997) (holding that brief security lockdowns and lack of access to the prison's law library for an unspecified number of days could not be characterized as an "extraordinary circumstance").

Here, Petitioner has failed to establish that the August 18, 2005 prison lockdown prevented him from filing a timely federal habeas petition. First, Petitioner does not contend that the prison remained in a constant state of lockdown between August 18, 2005 and November 19, 2007, when the time to file his federal habeas petition expired. Indeed, the November 3, 2006 Memorandum submitted by Petitioner indicates that Facility D had already

returned to normal program on November 1, 2006. Although Facilities A, B and C remained on a modified program due to the incident prompting the prison lockdown, those facilities had returned the blacks, whites and others to the level of program that they had prior to recent facility searches on October 30, 2006. The Memorandum also indicates that an effort was being made to return the entire prison to normal operations by adding to the Hispanic unlock list each week. (See Objections, Document #1). Furthermore, the Memorandum only provides an update of the prison lockdown as of the date it was issued, November 3, 2006. (See id.). Petitioner has not provided any subsequent updates regarding the prison lockdown. Based on the record before the Court, it is possible that the August 18, 2005 prison lockdown terminated before the time to file Petitioner's federal habeas petition expired on November 19, 2007.

Second, even assuming that the prison lockdown remained in effect from August 18, 2005 until November 19, 2007, and that the lockdown affected Petitioner's ability to receive legal assistance from a black inmate residing in another building, the record shows that Petitioner was able to file a habeas corpus petition in the Los Angeles County Superior Court on September 15, 2006 (Respondent's Lodgment No. 5) and a habeas corpus petition in the California Court of Appeal on October 11, 2006. (Respondent's Lodgment No. 7). Importantly, Petitioner was able to file a habeas corpus petition in the California Supreme Court on December 10, 2006, containing the claims raised in the Instant Petition. (See Respondent's Lodgment No. 9). These filings belie Petitioner's assertions that the prison lockdown made it "impossible" for him to "get [his] legal work and advice (in writting [sic]) to/from Regal Robinson, C-52405 located in A-3-107u" or prevented him from filing a timely federal habeas petition.[19]

---

[19] The Court also notes that a petitioner's lack of legal assistance in preparing a federal petition does not justify a failure to timely file a federal habeas petition because prisoners in California are not entitled to legal assistance, including inmate assistance, in collateral proceedings as a matter of right. See Pennsylvania v. Finley, 481 U.S. 551, 557 (1987) (state not required to provide appointed counsel in state post-conviction proceedings); Miranda v. Castro, 292 F.3d 1063, 1067-68 (9th Cir. 2002) (denying equitable tolling for attorney negligence because there is no right to effective assistance of counsel for post-conviction relief); see also Amavisca v. Scribner, 2006 U.S. Dist. LEXIS 93198, at *15-16 (E.D. Cal. 2006) ("Petitioner's reliance on a fellow inmate and the prison's failure to provide Petitioner with legal assistance are not sufficient, because prisoners in California are not entitled to legal assistance in collateral proceedings as a matter of right" and "Petitioner's reliance on an inmate (continued...)

1 (See Objections at 2). As such, Petitioner has not established a "but-for" connection between
2 the August 18, 2005 prison lockdown and the untimely filing of the instant Petition. See
3 Raspberry, 448 F.3d at 1153 (petitioner "bears the burden of showing that equitable tolling is
4 appropriate."); Gaston v. Palmer, 417 F.3d 1030, 1034 (9th Cir. 2005) (requiring a "causal
5 connection" between the alleged extraordinary circumstances and the failure to file a timely
6 petition), modified on other grounds by 447 F.3d 1165 (9th Cir. 2006).

7     Finally, with respect to access to the prison law library, Petitioner makes no attempt
8 whatsoever to show that an inability to utilize the law library was the cause of his untimely filing.
9 Petitioner does not assert that he made any unsuccessful requests to use the law library, or
10 provide the dates on which he was allegedly denied access to the library. See Marsh v.
11 Soares, 223 F.3d 1217, 1221 (10th Cir. 2000) (holding that causation was not demonstrated
12 where a petitioner claimed equitable tolling on the basis of the closure of the law library, even
13 where the closure took place near the end of the limitations period); Miller, 141 F.3d at 978;
14 Ciria, 1998 U.S. Dist. LEXIS 18049, at *8; Van Poyck, 980 F. Supp. at 1111.

15     In sum, Petitioner has offered no facts or evidence to show that extraordinary
16 circumstances prevented him from complying with the AEDPA's one-year statute of limitations.
17 Accordingly, the Court finds that the Petition is untimely filed and must be dismissed.[20]

---

[19](...continued)
assistant was strictly voluntary and he could have filed his petition at any time."); Popov v. Marshal, 2006 U.S. Dist. LEXIS 63956, at *13-14 (E.D. Cal. 2006) (petitioner's inability to file petition due to failure of legal assistance insufficient to justify equitable tolling because prisoners in California are not entitled to legal assistance, including inmate assistance, in collateral proceedings as a matter of right). Thus, to the extent Petitioner argues that the prison lockdown inhibited communication or the transfer of legal materials between Petitioner and the inmate who provided him with legal assistance, which, in turn, prevented Petitioner from filing a timely federal habeas petition, the argument fails.

[20] For the first time in his Objections, Petitioner argues that his claims "are claims of 'actual innocence'" and that "to procedurally bar [his] writ without getting to the merits of his claims will result in a miscarriage of justice." (See Objections at 3-4). The procedural default doctrine provides that "[w]hen a state prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the U.S. Supreme Court, he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence." Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994). Respondent, however, does not contend that Petitioner's claims are procedurally barred; rather, Respondent contends that the instant Petition is barred by the
(continued...)

**RECOMMENDATION**

The Court, therefore, recommends that the District Court issue an Order: (1) approving and adopting this Final Report and Recommendation and (2) directing that Judgment be entered denying the Petition for Writ of Habeas Corpus and dismissing this action with prejudice.

DATED: May 7, 2008

/s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE

---

[20](...continued)
applicable statute of limitations.

To the extent Petitioner is arguing that he should be excused from failing to timely file his Petition because he is "actually innocent," the Court rejects the argument. In Schlup v. Delo, 513 U.S. 298 (1995), the United States Supreme Court held that a petitioner may establish a procedural "gateway" permitting consideration of the merits of defaulted claims if he demonstrated "actual innocence." Schlup, 513 U.S. at 316. Neither the Supreme Court nor the Ninth Circuit has decided whether the AEDPA's statute of limitations provision may be overridden by a showing of "actual innocence." See Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (declining to resolve whether actual innocence can excuse an untimely petition); see also Lisker v. Knowles, 463 F. Supp. 2d 1008, 1032 (C.D. Cal. 2006). Regardless, even assuming the "actual innocence gateway" is available to excuse the untimeliness of a habeas petition, Petitioner fails to satisfy the Schlup standard with respect to an otherwise barred claim.

To support a claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324; see also House v. Bell, 547 U.S. 518, 537 (2006); Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003) (requiring new evidence not presented at trial); Shumway v. Payne, 223 F.3d 982, 990 (9th Cir. 2000) ("Actual innocence must be based on reliable evidence not presented at trial."). The Ninth Circuit has noted that because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." Shumway, 223 F.3d at 990. Ultimately, the petitioner must prove that it is more likely than not that no reasonable juror would have found him guilty in light of the new evidence. See Schlup, 513 U.S. at 327; Van Buskirk v. Baldwin, 265 F.3d 1080, 1084 (9th Cir. 2001) ("the test is whether, with the new evidence, it is more likely than not that no reasonable juror would have found [p]etitioner guilty").

In this case, Petitioner has not offered any new evidence of actual innocence. Petitioner's unsupported statements that his claims "are claims of 'actual innocence,'" and procedurally barring his claims without reaching the merits will result in a miscarriage of justice (see Objections at 3-4), are insufficient to satisfy the Schlup standard.

17